UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| Case No. | 5:26-cv-03735-SSS-DSR | Date | July 9, 2026 |
|---|---|---|---|
| Title | *Ilia Bakumets v. Warden Adelanto ICE Processing Center et al.* | | |

Present: The Honorable    SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **(IN CHAMBERS) ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS [DKT. NO. 1] AND DENYING EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER [DKT. NO. 2]**

Petitioner Ilia Bakumets filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 and a contemporaneous Ex Parte Application for a Temporary Restraining Order, each seeking his immediate release from immigration detention. [Dkts. No. 1, 2]. Respondents filed a Response on July 8, 2026, indicating their non-opposition to Petitioner's Application and Petition for Habeas Corpus. [Dkt. No. 8]. Petitioner filed a Reply on July 9, 2026. [Dkt. No. 9]. Having considered the parties' arguments, relevant legal authority, and record in this case, the Court **GRANTS** the Petition for a Writ of Habeas Corpus, [Dkt. No. 1], and **DENIES** the Ex Parte Application as moot, [Dkt. No. 2].

## I.    BACKGROUND

Petitioner Ilia Bakumets is a nineteen-year-old asylum seeker from Russia who entered the United States with his parents and younger brother at age fifteen, was paroled in April 2023, and has lived at liberty in California ever since. [Dkt. No. 1, Petition for a Writ of Habeas Corpus or "Petition" ¶ 1]. He works alongside his father at his family's small business and has never been arrested, charged with

any offense, or alleged to have violated any conditions of his parole.  [*Id.*].

On June 27, 2026, Petitioner and his father were arrested by Immigration and Customs Enforcement ("ICE") at a worksite without any notice or pre-deprivation hearing.  [*Id.* ¶ 2].  They were told that they were being taken for "verification and document updates."  [*Id.*].  He was transported that same night to Adelanto ICE Processing Center, where he is detained.  [*Id.*].

Petitioner brings his Petition under Fifth Amendment for deprivation of his liberty from the lack of pre-deprivation due process and under the Administrative Procedure Act for arbitrary and capricious agency action.  [*Id.* ¶ 32–46].  He requests the Court to issue the writ, order his immediate release, and enjoin his re-detention absent constitutionally adequate process.  [*Id.* ¶ 3].

## II.   LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2).  Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241.  This includes challenges by noncitizens in immigration-related matters.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025).  "The Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings," *Demore v. Kim*, 538 U.S. 510, 523 (2003), and such "freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects."  *Zadvydas*, 533 U.S. at 690 (citation modified).

Whether a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal is determinative of whether the detention is, or is not, pursuant to statutory authority.  *Id.* at 699.  The basic federal habeas corpus statute grants the federal courts authority to answer that question.  *See* 28 U.S.C. § 2241(c)(3).  In doing so, courts carry out what has been described as the "historic purpose of the writ," namely, "to relieve detention by executive authorities without judicial trial."  *Zadvydas*, 533 U.S. at 699 (citing *Brown v. Allen,* 344 U.S. 443, 533 (1953) (Jackson, J., concurring in result)); *see also Preiser v. Rodriguez,* 411 U.S. 475, 484 (1973) ("The essence of habeas corpus is an attack by a person in custody upon the legality of that custody,

CIVIL MINUTES— GENERAL  Initials of Deputy Clerk iv

and . . . the traditional function of the writ is to secure release from illegal custody.").

## III.   DISCUSSION

A noncitizen who has been released on parole into the United States has a due process interest in "an opportunity or a hearing *before* he is deprived of any significant protected interest." *R.A.N.O v. Wofford*, F. Supp. 3d, 2026 WL 40507, at \*7 (E.D. Cal. Jan. 6, 2026) (emphasis in original); *see also E-M v. Hermosillo*, 2026 WL 883776, at \*6 (D. Or. Mar. 31, 2026) (there are "overwhelming authorities holding that after a noncitizen has been released on conditional parole, due process requires notice and a pre-deprivation hearing.") (discussing cases).

The requirements generally cannot be satisfied with a post-deprivation hearing. *See Zaitsev v. Warden, Adelanto*, 2026 WL 1047942, at \*7 (C.D. Cal. Apr. 15, 2026) ("[A] post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing.") (citing cases); *Zepeda Perez v. Santacruz, et al.*, 2026 WL 980492, at \*5 (C.D. Cal. Apr. 9, 2026) ("Post-deprivation custody hearings do not remedy the lack of constitutionally required pre-deprivation process."); *see generally Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982) ("[A]bsent the necessity of quick action by the [Government] or the impracticality of providing any pre-deprivation process, a post-deprivation hearing would be constitutionally inadequate." (citation and quotation marks omitted)). "[S]uch a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *E.A T.-B v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).

To determine what procedures are constitutionally sufficient to protect a liberty interest, courts apply the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976): (1) the private interest affected by the official action; (2) the risk of erroneous deprivation through the procedures used and the probable value of additional or substitute procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens of additional procedural requirements.

These factors weigh in Petitioner's favor. First, Petitioner's interest in freedom from detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Second, "there exists a significant risk of the erroneous deprivation of Petitioner's . . . parole because he has been detained

CIVIL MINUTES—GENERAL   Initials of Deputy Clerk iv

before the parole has been properly revoked." *Singh v. Noem*, F. Supp. 3d, 2026 WL 766228, at *9 (D. N.M. Mar. 18, 2026).  Pre-deprivation safeguards "would greatly reduce the risk" of an erroneous deprivation of parole.  *Id.*  Third, "although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is 'low.'" *R.A.N.O.*, 2026 WL 40507, at *7 (quoting *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)).

Finally, the appropriate remedy for the deprivation is release from custody. This was not one of the "extraordinary situations where some valid governmental interest [was] at stake that justifie[d] postponing the hearing until after the event." *United States v. James Daniel Good Real Property*, 510 U.S. 43, 53 (1993).  Even if Petitioner had already been granted a post-deprivation bond hearing, he was detained "in violation of his ongoing . . . parole."  *Singh*, 2026 WL 766228, at *10 (finding immediate release warranted even though a post-deprivation bond hearing had been provided because it failed to cure the injury of being detained while Petitioner's parole was ongoing and not properly terminated); *see also E.G.M. v. Scott,* 2026 WL 914803, at *6 (W.D. Wash. Apr. 3, 2026) ("any post-deprivation remedies he has received do not cure the constitutional violation"); *Domingo v. Kaiser*, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) (even if Petitioner had received a prompt post-detention hearing and was released, "he will have already suffered the harm that is the subject of his motion; that is, his potentially erroneous detention").

Thus, "[t]his case does not represent the special instance of the *Mathews* due process analysis where post-deprivation process is all that is due because no pre-deprivation safeguards would be of use in preventing the kind of deprivation alleged." *Zinermon v. Burch*, 494 U.S. 113, 139 (1990).

## IV.   CONCLUSION

For the aforementioned reasons and in light of Respondents' non-opposition, the Court **GRANTS** Petitioner Ilia Bakumets's (A241-141-256) § 2241 Habeas Petition and **ORDERS** his release forthwith.  [Dkt. No. 1].  Respondents shall not impose any release restrictions on petitioner, such as electronic monitoring, unless deemed necessary at a future pre-deprivation bond hearing.  Respondents are further **ORDERED** to return to Petitioner any seized identity documents at the time of his release.

Respondents are **ENJOINED AND RESTRAINED** from again detaining Petitioner without notice and a pre-detention hearing where the government bears the burden of proving, by clear and convincing evidence, that the circumstances have changed as to his danger to the community or a flight risk, and that no conditions other than his detention would be sufficient to prevent those harms. *Pinchi*, 792 F. Supp. 3d at 1037–38.

Respondents are **ORDERED** to file a status report certifying compliance with the above order of release within three (3) days from the date of this Order and Judgment.  The Ex Parte Application for a Temporary Restraining Order is **DENIED** as moot.  [Dkt. No. 2].

An entry of Judgment will follow this Order.

**IT IS SO ORDERED.**

---

CIVIL MINUTES—
                                       GENERAL                  Initials of Deputy Clerk iv